By the Couet.
Duer J.
We have found no reasons for altering the opinion that we expressed upon the hearing that the principal question, upon the merits, that we are now required to determine, is exactly the same that was expressly determined by this Court in Fatman v. Lobach, and virtually, by the Court of Errors, in the thoroughly considered case of the Commercial Bank of Buffalo v. Kortright; and we agree with the counsel for the plaintiff for the reasons he has given, that if there is any difference between this case and Fatman v. Lobach, the difference is in favor of his client. But, in reality, although the cases differ in their circumstances, in principle they are not to be distinguished.
The law, therefore, so far as this court is concerned, must be considered as settled, that where a certificate of shares of stock, and an irrevocable power of attorney from the owner to transfer them, with a blank for the name of the attorney, are in the hands of a third person, the holder of the securities, as they may properly be termed, is presumptively the equitable owner of the shares, and that, when he is shown to be a holder for value, and without notice, his title as such owner cannot be impeached. That such a power is not limited to the person to whom it may first have been delivered, but enures to the benefit of each bond fide holder into whose hands the certificate and power may subsequently pass, each successive holder having the right to fill up the blanks, and execute the power, or cause it to be executed, whenever the protection of his own interests, as a pledgee or absolute owner, may require it. That the power is not exhausted by the first use to which it is applied, nor revoked by the death of the party giving it, but, unless surrendered to the person who gave it, or cancelled, continues in force until its execution by an actual transfer of the shares to which it relates; and that the validity neither of the *21 power or of the transfer, is, at all, affected by the number of the persons through whose hands the certificate and power, since their first delivery may have passed. It is not necessary now to dwell upon the manifest reasons of public convenience and public policy that commend these rules to our adoption, and require us to enforce them; it is sufficient to say that they are the rules, which, in our judgment, are established by decisions that we are bound to follow. If* they have not been so explicitly stated in any previous case, they are necessarily implied in both of those to which I have referred, and in many others.
It is not necessary to discuss the question, whether the evidence of usage, which ⅛ appears from -the case was given on the trial, was properly admitted, for, as the existence of the usage has not been found as a fact by the Judge, we must consider the evidence in relation to it, as finally rejected. The exception to the admissibility of the evidence has thus been rendered immaterial. We also deem it useless to discuss the question whether the transfer from Gould to the plaintiff was not void under that provision of the Revised Statutes which declares, that “ no assignment or transfer of any effects for the benefit or security of a moneyed corporation shall be valid in law, unless it be made to the corporation directly and by name.” (1. R. S. § 57, p. 591.) The objection was not much pressed and is plainly untenable. The transfer was made to the plaintiff, not individually, but as president of the bank, and was therefore made by the fair interpretation of the provisions of the general banking law directly, and by name to the bank itself.
If we are right in the observations that have been made, they furnish a complete answer to all the arguments that have been urged to induce us to reverse the judgment in favor of the plaintiff Leavitt; and the bank which he represents. So far, therefore, the judgment appealed from must be affirmed.
The only question that remains is, whether we are bound to reverse or modify that part of the judgment which admits and directs to be satisfied the claim of the appellant’s co-defendant Gould. The arguments to convince us that such is our duty, were pressed upon us with great earnestness by the learned counsel for the appellant, and our respect for the counsel and his manifest sincerity, has led us to examine them with more than' ordi *22 nary care. We own, that they created at first some doubts in our minds, but we are now satisfied that they were founded upon a misapprehension both of the facts and of the law of the case, and that in truth, no other judgment than that which has been so vehemently assailed, could with propriety have been rendered-
The grounds upon which it is sought to be reversed are, First— That Gould was improperly made a party to the action, and that his answer ought therefore to be suppressed, and his name be stricken from the record. Second — That if Gould was properly made a party, express notice of his claim ought to have been given to his co-defendant before the trial, and as it was not made known until then, nor until the testimony was closed, it ought to have been rejected. And, lastly — That the case from the character of the pleadings and the nature of the claim, is not one in which a judgment as between co-defendants, can properly be rendered.
These objections will be considered in their order as stated. As to the first. We understand that it rests entirely upon the allegation that the judgment of interpleader, by which a new action between the plaintiff and appellant was ordered, plainly directs that if the action should be brought by the plaintiff, the appellant as administrator &c. of Miller, should be made the sole defendant. It was for the determination of their rights alone that the action was ordered, and it was, therefore, not competent to the plaintiff to alter its form and extent by the introduction of a new defendant. It is a sufficient reply to this objection thatthe facts upon which it is founded appear upon the face of the complaint, and consequently that the appellant, if he wished to avail himself of the objection, was bound to take it in his answer. 3STot only is the judgment of interpleader referred to in the complaint, but a copy is annexed, and is, therefore, to be considered a part of the complaint, and, hence, the question whether the terms of the judgment require the interpretation that the appellant gives to them, had he chosen to answer, would have been distinctly raised. Even if the reference to the judgment in the complaint, notwithstanding a copy is annexed, is to be deemed insufficient, the appellant might have set forth the judgment in his answer and relied upon it as a bar to the farther prosecution of the suit in its actual form, and had he taken the objection, either by demurrer or by answer, if valid, it *23 ■would have been sustained. But if so, it is certain that it cannot now be sustained, for the plain reason, that at this time we have no right to listen to it at all. The provisions of the Code in §§ 144-147, and 148, as they have been construed by this court in other cases, apply just as well to an excess of parties, as to a defect,in the strict sense of the term; and they declare, that, in each case, if the objection shall not be taken by demurrer or by answer, the defendant shall be deemed to have waived it. If not thus taken, although the court is not precluded from acting upon its own motion, (Davis v. The Mayor, &c., 1 Duer, 665-6, Code, § 122,) it cannot be taken by the defendant in any other mode or in any other stage of the cause.
But although this reply to the objection that Gould ought not to have been made a party, is, in our opinion, sufficient and conclusive, it is not that upon which alone we desire or mean to rest our decision. We reject, as far too narrow, that construction of the judgment of interpleader that we have been urged to adopt, and upon which the whole argument for the suppression of the answer of Gould was manifestly founded. We reject it as a construction, which, adhering servilely to the letter of the judgment, overlooks entirely its spirit and intent, and thus presents a case to which the sound maxim, “ qui hceret in litera, hmret in cortice, ” emphatically applies. Even upon the supposition then that we have erred in our construction of the Code, and that its provisions are only applicable to a defect and never to an excess of parties, and consequently that the motion for suppressing the answer and striking out the name of Gould was properly made upon the trial "at special term, we retain the opinion that the Judge would have erred had he granted the motion, and that his decision denying it must therefore be affirmed.
We think that the substantial meaning of the judgment of interpleader'was this and only this; that a suit should be instituted in which the respective claims of the plaintiff, as representing the American Exchange Bank, and of the appellant, as the personal representative of Miller, to the sixty shares of stock which are the subjects in controversy, should be finally determined, and consequently that by the institution of the present action, in which a determination of their claims that may become final, has been made, the purposes of the judgment have been fully *24 answered and the judgment been carried into effect according to tbe intentions of tbe court tbat pronounced it. It is true that tbe judgment admits tbat tbe plaintiff and tbe appellant shall be made tbe parties in tbe action to be brought, and mentions none other, but we think tbat it would be unreasonable to construe this silence, as forbidding tbe introduction of other persons as parties whose presence as such, from tbe interest claimed by them in tbe property, which was tbe subject of tbe controversy, might become necessary to its proper and final determination — a prohibition which should have this effect, we are satisfied could not have been intended by tbe court, and as it is not expressed, it certainly ought not to be implied; and in its absence, we cannot doubt tbat Gould was, not merely, a proper but a necessary party. Not only without bis presence could there be no complete determination of the controversy, but from the nature of the controversy, without his presence, no final judgment could rightfully have been given.
As the American Exchange Bank claimed, not the absolute ownership of the sixty shares of stock, but merely the right of selling them, for the purpose of satisfying the debt for the sum pledged, no other than a judgment ordering their sale, — should their claim be established, even had Gould not been made a party to the action,' — could properly have been rendered; and, in effect, it is this judgment that the appellant, in his answer, by claiming the difference between the market value of the shares and the amount that might be found due to the bank, required to be given. But it is manifest that the court would have been guilty of great injustice, if in ordering the shares to be sold it had directed the surplus proceeds to be immediately paid over to the appellant, without giving to Gould any. opportunity of being heard and asserting his claims, although it appeared upon the complaint that it was from him as a bond fide holder, and perhaps absolute owner, that the bank derived its title. On the other hand, had it been shown that the bank had no claim to the shares, by proof that no loan had been made to Gould, or that the loan had been satisfied, or the debt released, a judgment directing an immediate transfer of the shares to the appellant, without an opportunity allowed to Gould of vindicating his rights as an absolute or conditional owner, would have been equally and as palpably *25 unjust. We may therefore he certain that in neither of the cases supposed would a judgment have been rendered affecting the interests and disaffirming the rights- of Gould without his presence as a party to the action, and consequently that he must and would have been made a defendant.by an order of the court upon the hearing of the cause, had he not been made so by the act of the plaintiff in the commencement of the suit.
We pass then to the next objection : That the appellant had not only no sufficient notice, but none whatever of the claims of Gould, until the trial of the cause.
It would, perhaps, be a sufficient reply to this objection, that although this want of notice, were it truly alleged, would have been a sufficient reason for the postponement of the trial in order that a farther opportunity might be given to the appellant of contesting by witnesses the claims of Gould, it was not a reason, that could justify the absolute rejection of a claim, which had been properly made in the answer of Gould, and as the case then stood, the evidence of Tracy, the appellant’s own witness, had fully established — and that it is this absolute rejection that was alone demanded, as well upon the trial as upon the argument before us; yet we should not have acquiesced in this reply, had we been satisfied that no such notice of the claims of Gould had been given to the appellant as made it his duty to be prepared to meet them upon the trial, for had this been our conviction we should have ordered a new trial', not indeed of the whole case, but as between^ the appellant and Gould, and for the sole purpose of settling their opposite claims, to the surplus proceeds of the sale that has been ordered.
It was upon this question of a sufficient notice to the appellant that the argument of his counsel created some doubts in our minds upon the hearing, but these have been wholly removed by a careful examination of the pleadings, and we are now convinced, that all the notice to which the appellant was entitled was in fact given, and that from the notice thus given he was bound to know that the claims of Gould to an interest in the stock beyond the amount which he had borrowed from the bank, might and probably would be preferred upon the trial, and if then established by proof, must be allowed by the court. If, therefore, there was any surprise, it was the result of the appellant’s own neg *26 ligence and is not imputable to any act or proceeding of the plaintiff or of Gould.
The complaint contains a distinct and positive averment, not only that the assignment and power of attorney from Miller were delivered to the bank by Gould as its security for the loan then made to him, but that he had acquired the possession under circumstances that gave him all the rights of a bond fide holder for value, and that value was in fact given by him; and the appellant in his answer not only denies specifically these allegations, but'avers positively that no value or consideration whatever was given by Gould either to Tracy or Miller, and he closes his answer by stating that Gould was the real plaintiff, claiming the stock adversely to the appellant as administrator. The appellant then presumed that under the issue which he had himself raised, the claims of Gould upon the stock would or might become a subject of investigation upon the trial. He knew further, from the complaint, that Gould was made a defendant in the action and might set forth his claims in his answer and insist upon their satisfaction, and he was bound to know that it would be competent to Gould to support his answer by proof upon the trial, and that, should, it be proved that he was a bond fide holder of the stock for a value exceeding the sum which he had borrowed from the bank, it would be the duty of the court to decree the satisfaction of this claim out of the surplus proceeds of a sale, instead of directing all these proceeds to be paid to the appellant as the personal representative of Miller. Under these circumstances, we find it impossible to say that the notice which the appellant had received and the knowledge which he possessed, or was bound to possess, were not sufficient to impose upon him the duty of being prepared to meet upon the trial any claims whatever upon the stock which Gould might then advanee by his counsel and sustain by testimony. The appellant’s ignorance of the actual contents of the answer of Gould must, with the knowledge Which he in fact possessed, and which made it his duty to inquire, be deemed voluntary, and could not therefore be properly urged, either upon the trial or upon the hearing of this appeal. If he desired to know the precise contents of this answer he might and should have ascertained them by a proper inquiry. If the answer were not filed, he might have compelled it to be so by an order *27 of court, or had he demanded its production from the attorney of Gould it could not have been refused. It was his own fault therefore, that he chose to proceed to the trial without a full knowledge of the nature and extent of the claim that Gould had made in his answer and upon the trial would be entitled to prove. We find no authority for the position that the appellant was entitled without demand to the service of a copy of the answer, and that without such service the adverse claim of his co-defendant would not be admitted. The service by one defendant of his answer and of a copy of his answer upon a co-defendant, is not required, in any case, by the provisions of the Code, nor, as we understand, was it required by the former practice in Chancery in cases similar to the present. That.cases may arise in which such a service, although not made necessary by the provisions of the Code, may be justly required by the court, we do not doubt, but the present, for the reasons already given, does not fall within the class of those to which we allude. The cases to which the admission that we have made would apply are those alone, in which there is no reference whatever in the complaint to the actual or probable existence of a claim, that subsequently is set up in an answer.
We can attach no importance to the fact that the claim of Gould was not brought forward by his counsel upon the trial until the testimony was closed and the counsel for the appellant had addressed the court. This course was doubtless irregular, but was not an irregularity that can furnish any ground for a reversal of the judgment, nor is it seen how it could have worked any prejudice to the' appellant. When the counsel for the plaintiff stated that he was also the counsel for Gould, and upon the evidence of Tracy demanded a judgment in his favor, the statement might justly have been regarded as the opening of the case on behalf of Gould, and the counsel for the appellant might then,' very properly, have demanded to be heard in reply; but instead of replying to the claim of Gould upon the evidence and the law, he chose to demand its entire suppression, and the total exclusion of Gould as a defendant in the action — a demand with which it was impossible for the Judge to comply without a plain violation of the rights of Gould and of his own duty.
The next objection to the judgment in favor of Gould, is that *28 the ease is not one in which a judgment between co-defendants can properly be rendered; and the first reason assigned in support of the objection is, that the complainant does not set out any title in Gould, nor claim any relief on his behalf. This reasoning it seems to us, involves a misconception of the proper office of a complaint, and of the real contents of that which is before us. The complaint does set forth the title of Gould just as fully as was necessary to justify the insertion of his name as a defendant. It sets out his title as a bond fide holder of the stock, for value, leaving, as was manifestly proper, the nature and extent of his claims, as founded on the value he had given to be set out by himself in his answer. It is true the complaint demands no relief on his behalf; but we apprehend such a demand so far from being necessary would have been a palpable error. The demand by a plaintiff on behalf of a defendant for the relief to which the latter may be entitled, but may claim or not, at his own election, would be a novelty in pleading, and if not demurrable, would certainly be stricken out on motion, as wholly irrelevant.
The other reasons that were urged in support of the last objection to the judgment, have already been disposed of, by showing that Gould was not a stranger, whose introduction as a party, raised a new issue foreign to the controversy; but that, on the contrary, his presence was necessary to its complete determination.
It is also to be observed that this is not a case in which a judgment is rendered in favor of one defendant against another. No judgment is sought or has been rendered against the appellant individually, or as the administrator, &c., of Miller. All that has been done is to determine the respective claims of the parties, and the order of their satisfaction, upon a fund, in which they have a common interest; and the judgment rendered is exactly such as Courts of Equity have at all times been accustomed to render, when adverse claims to a fund in court are necessary to be settled. It is not a judgment, as was supposed, that can only be warranted by the provisions of the Code. In conclusion, we see no reason to believe or indeed suspect that any injustice has been done; nor has it been pretended that if a hew trial were granted, any further testimony can be given, by which the case as between the appellant and Gould can be at all varied.
*29 The judgment must, therefore, be affirmed with costs on this appeal .to the respondents, to be paid out of the proceeds of the sale that has been ordered.